AMERICAN FINANCIAL CORP., ET AL., *v.* FIREMAN'S FUND INS. CO.

(No. A-209007. Decided December 7, 1966.)

Common Pleas Court of Hamilton County.

*Messrs. Keating, Muething & Klekamp* and *Mr. John L. Muething*, for plaintiff.

*Messrs. Rendigs, Fry, Kiely & Dennis* and *Mr. John A. Kiely*, for defendant.

HESS, J. This cause is submitted to the court on the pleadings, evidence, stipulations, arguments and briefs of counsel.

## FACTS

There is no material dispute on the facts presented to the court.

On April 3, 1964, a home located on Lot No. 20 Meadowville Estates Subdivision in Carlisle, Ohio, was destroyed by wind. The American Home Savings Association had a mortgage interest in this property.

Counsel for the plaintiffs and defendant have presented the following stipulation of fact:

I

"The parties by the signature of their counsel hereto waive the submission to a jury of the matters in controversy herein between them and agree to the trial of this cause by the court.

II

"The court is respectfully requested to separately state its findings of fact and conclusions of law.

III

"All parties hereto are corporations.

IV

"On September 19, 1963, defendant issued to plaintiffs as insureds, for a consideration, its policy of fire insurance in the amount of $50,000.00, to which was attached and made a part an errors and omissions endorsement form. A copy of the policy with all endorsements is attached, made a part hereof and marked Exhibit A.

V

"On April 3, 1964, while the said policy was in full force and effect, a house described as Lot No. 20, Meadowview Estates Subdivision, Carlisle, Ohio, on which American Home Savings Association was mortgagee, was destroyed by windstorm.

"The insurance, carried by Ohio Casualty Insurance Company, on said premises had been cancelled for nonpayment of premium as of March 5, 1964, and notice of cancellation was given before that date by the insurer, to the owner of the property and to American Home Savings Association. Copy of notice of cancellation and letter of inquiry from American Home Savings Association addressed to mortgagors are attached, made a part hereof and Marked Exhibit B. The mortgagors thereafter were adjudicated bankrupt and any obligation on the note

secured by said mortgage was discharged in bankruptcy.

"The loss by reason of the destruction of the said property amounts to $10,000.00.

### VI

"The circumstances surrounding the matter are fully set forth in the statement of Iver Wilson, attached hereto, made a part hereof and marked Exhibit C.

### VII

"It was the duty of Iver Wilson, in the regular course of her employment, to handle matters of lapsed insurance for American Home Savings Association, to see that insurance was kept in force either by renewing any existing policy or by procuring insurance coverage at once where policies lapsed or were cancelled on real estate of which American Home Savings Association was mortgagee to protect its security.

### VIII

"Claim has been made by plaintiffs against defendant under said policy. Said claim has been declined."

Exhibit C referred to in paragraph VI of the stipulation of fact reads as follows:

"May 4, 1964
Cincinnati, Ohio

#### STATEMENT

"My name is Iver L. Wilson. I am 49 years of age, married, and live with my family at 3021 Kinmont Ave., Cincinnati 8, Ohio. For the past 1½ years I have been employed by the American Home Savings Assoc., as a teller, at their 523 Walnut Street, Cinti. location. That is, I was hired as a teller. Then, last June 18, 1963, I changed my job classification to that of a bookkeeper and my duties were such until about one week ago when I was changed back to a teller again. My duties as a bookkeeper included daily posting of the savings and loan accounts, preparing the necessary weekly and monthly reports, payment of the taxes and insurance on loans, where necessary, which included payment of insurance premiums covering real property my company had loaned

money on, where the mortgagor or owner of the real property had allowed their insurance policy, protecting both their and my company's interest, to expire. Sometime before March 5, 1964, I cannot say exactly when, I received a 'Notice of Cancellation' form from the Ohio Casualty Insurance Co., informing that insurance coverage on property on lot No. 20 of Meadowdale Subdivision, owned and mortgaged by Marion L. and Helen Sherman, through my company, was to expire on March 5, 1964. I recall that the notice of cancellation was dated Feb. 21, 1964; but, as I said, I do not recall when I received it. On March 5, 1964, I wrote the homeowner, Mr. Sherman, that his homeowners policy with the Ohio Casualty Insurance Co. had already expired, and that it would be necessary that he secure another. I do not recall whether I wrote this letter in the morning or afternoon of March 5, 1964. When I wrote the letter, I realized the policy with Ohio Casualty had already expired. In a normal circumstance such as this, the notice of cancellation is received well in advance of the policy expiring and the procedure is to inform the owner (such as Mr. Sherman) of the necessity of securing other insurance. Then, after 10 days, if the owner is not heard from someone such as I secures the necessary coverage and apply the cost of the policy to the owners loan, charging the amount of the principal of the owners loan. I have done this on more than one occasion. My intentions were not to wait the full 10 days in Mr. Sherman's case, as I realized his policy had expired (had already expired) when I wrote the letter on March 5, 1964. However, shortly after I wrote this letter the file concerning Mr. Sherman's loan, was taken from me by Shirley Rapier, my superior and office manager. I believe she gave the file to a Mr. Bruce Burton who took the file to the Loveland, Ohio, office of The Hunter Savings and Loan Co. The reason for this was that Mrs. Rapier had received notice that Mr. Sherman was in the process of declaring bankruptcy; and the file was so transferred to Loveland so that my company's interests could be protected by management there. After

the file left my hands I forgot about the incident and failed to follow up my letter of March 5, 1964. I was unaware the file had been taken from my desk by Mrs. Rapier.

"I have read the above statement of two pages, eleven lines and five words and it is true. There is nothing I wish to add.

WITNESSED
William S. Durkin
Shirley A. Rapier                                Iver L. Wilson"

The policy of insurance referred to in the stipulation carried the following pertinent provisions: (see Exhibit A for entire policy).

Defendant alleges the insuring agreement A reads as follows:

"(1) Subject to the limit of liability, and the exclusions and conditions applying to Section 1, this Company agrees to indemnify the Insured against loss to the Insured's mortgagee interest (including the Insured's mortgagee interest in any legal fiduciary capacity) in real property arising by reason of error or accidental omission in the operation of the Insured's customary procedure in requiring, procuring and maintaining valid insurance against the risks and perils described below; (a) payable to itself as mortgagee on such real property; and, (b) on such real property during and after foreclosure by the insured or when sold under a conditional sales agreement or other instrument where title remains with the Insured; if, by reason of such error or accidental omission, requisite insurance is not in force at the time of loss.

"(2) If the Insured services mortgages under a written contract or agreement with one or more principals and the number of such mortgages is included in the estimate above, this insurance covers as though the Insured owned the mortgage interest under mortgages serviced for the account of others, and any payments hereunder shall be made jointly to the named Insured and the owner of the mortgage."

Defendant alleges that the errors and omissions coverage provides in part as follows:

"Insurance as provided herein attaches only with respect to the interest of the named insured . . ."
and further provides:

"(h) Exclusions: This Company shall not be liable for loss resulting from: (1) any occurrence taking place more than ten (10) days after the insured had knowledge that an error or accidental omission had occurred; . . ."

On February 21, 1964, the Ohio Casualty Insurance Co., by and through the R. L. Grimes Insurance Agency, Inc., sent to the plaintiff, American Home Savings Association, a "Notice of Cancellation" of said policy (Exhibit B), which notice was received by the American Home Savings Association prior to March 5, 1964. On the 5th day of March 1964, the American Home Savings Association forwarded to the American Financial Corporation the notice of cancellation and asked for advice relative to replacing the policy which had been cancelled.

The American Home Savings Association is a wholly owned subsidiary of the American Financial Corporation.

### The Issue

Did the destruction of the property in question on April 3, 1964, take place more than ten days after the insured had knowledge that an error or accidental omission had occurred.

### The Law

In Mrs. Wilson's statement she acknowledges receiving notice of cancellation of the policy prior to March 5, 1964. It must be concluded that Mrs. Wilson received the notice in ample time to cause a new policy to be issued; that she signed a letter on the American Home Savings Association stationery on March 5, 1964, advising the American Financial Corporation, the parent corporation, of the notice of cancellation.

The insurance contract excluded from coverage "any occurrence taking place more than ten (10) days after the insured had knowledge that an error or accidental omission had occurred."

There can be no question that Mrs. Wilson had knowl-

edge of the error (cancellation notice) more than ten days before the loss.

The plaintiffs base their claim on the premise that notice to Mrs. Wilson was not notice to the American Home Savings Corporation, and the officers of the American Financial Corporation were not notified of the errors.

This contention is not supported by the stipulation of facts filed herein. There was a specific duty and obligation delegated to Mrs. Wilson by both plaintiffs. This conclusion is supported by the letter signed by Mrs. Wilson on March 5, 1964. The record discloses that Mrs. Wilson was the agent of the plaintiffs, and they are bound by her act. The plaintiff corporations acted through their duly appointed agents.

It must be remembered that the American Home Savings Corporation was a wholly owned subsidiary of the American Financial Corporation, and notice to the subsidiary in this case was notice to the parent corporation.

This conclusion is supported by *Cleveland* v. *Payne,* 72 Ohio St. 347 and *Myers* v. *Insurance Company,* 108 Ohio St. 175. See also 12 Ohio Jurisprudence 2d 558, Section 448.

The memorandum brief of the plaintiff supports many propositions relative to agency but the authorities presented are readily distinguishable from the instant case.

In conclusion there is a contract to which all parties were bound. This contract provides ten days to correct errors. It is not an unreasonable time provision.

An entry may be presented entering judgment for the defendant.

*Judgment for defendant.*